# In the United States Court of Federal Claims

No. 19-713T

(Filed: July 27, 2020)

|  |  |
|---|---|
| KENNETH CLARK AND AMY CLARK,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Keywords: Tax Refund Claim; 26 U.S.C.<br>§ 7422(a); 26 C.F.R. § 301.6402-2(b)(1);<br>Signature Requirement; Penalty of<br>Perjury; Power of Attorney; Form 2848;<br>Waiver Doctrine. |

*Kathryn Magan*, Magan Law, PLLC, Dallas, TX, for Plaintiffs.

*Patrick Phippen*, Trial Attorney, U.S. Department of Justice – Tax Division, Court of Federal Claims Section, Washington, DC, with whom were *Mary M. Abate*, Assistant Chief, Court of Federal Claims Section, *David I. Pincus*, Chief, Court of Federal Claims Section, *Richard E. Zuckerman*, Principal Deputy Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiffs Kenneth Clark and Amy Clark (collectively "the Clarks") bring this action seeking to recover alleged overpayments of federal income taxes for tax years 2014 and 2015. Defendant, the United States, has moved to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). It contends that the Clarks cannot maintain a civil action in this court because they did not first "duly file" claims for tax refunds with the Internal Revenue Service, as required by 26 U.S.C. § 7422(a).

For the reasons that follow, the Court agrees with the government that because the Clarks did not sign their amended tax returns and verify them under penalty of perjury, 26 U.S.C. § 7422(a) precludes this Court from exercising subject-matter jurisdiction over their refund claims. Therefore, the government's motion is granted and the complaint is dismissed without prejudice.

## BACKGROUND[1]

### I.     Facts

#### A.     The Clarks' Amended 2014 and 2015 Tax Returns

The Clarks are United States citizens and taxpayers. Compl. ¶¶ 3–4, ECF No. 1. On April 8, 2015 and April 1, 2016, respectively, the Clarks filed their 2014 and 2015 tax returns with the Internal Revenue Service ("the IRS") using Form 1040. Compl. Ex. A, ECF No. 1-1 (2014 tax return); Id. Ex. B, ECF No. 1-2 (2015 tax return). The following year, the Clarks hired Castro & Co., LLC (hereinafter "Castro") to prepare their 2016 returns. Compl. ¶ 9. While working on the 2016 returns, Castro discovered what it believed were errors in the 2014 and 2015 returns. Id.

On October 16, 2017, Castro filed Forms 1040X (amended income tax returns) on behalf of the Clarks for tax years 2014 and 2015. Def.'s Mem. in Support of Mot. to Dismiss the Compl. ("Def.'s Mem.") Exs. 9, 10, ECF Nos. 18-10, 18-11 (tax transcripts). John Anthony Castro prepared the forms and affixed his signature on the line designated for the taxpayers as well as the one set aside for the "Paid Preparer." Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss the Compl. ("Pls.' Resp.") at 2, ECF No. 19; Def.'s Mem. Ex. 3, at 2, ECF No. 18-4.

It is undisputed that neither of the Clarks signed the Forms 1040X. It is also undisputed that the amended returns were not accompanied by a Form 2848 ("Power of Attorney and Declaration of Representative") through which the Clarks might have authorized Mr. Castro to sign the forms on their behalf. Def.'s Mem. at 4, ECF No. 18.

The amended returns reflected a reduction in the Clarks' adjusted gross income, as well as additional expenses related to their farming business, and various new itemized deductions. Id. In the forms, a tax refund of $19,100 was requested for tax year 2014 and a refund of $24,000 for tax year 2015. Id. Ex. 3, at 1 (2014 amended tax return); id. Ex. 4, at 1 (2015 amended tax return).

#### B.     Notice of the IRS Examination

Some six months after Castro filed the amended returns, on or about April 6, 2018, the Clarks received a letter from the IRS informing them that their 2014 amended tax return had been selected for examination. Compl. Ex. E, at 1, ECF No. 1-5. They later received two more letters dated June 7, 2018 which informed them that the IRS had commenced an examination of both their 2014 and 2015 amended returns. Id. Ex. F, ECF No. 1-6. These letters advised the Clarks that if they wished to use a representative in connection with the examination, they would each need to complete a Form 2848. Id. at 1.

Thereafter, on or about July 23, 2018, the Clarks submitted two Forms 2848 to the IRS. The forms, which each of the Clarks signed, authorized John Anthony Castro to represent them before the IRS in connection with income reported on Forms "1040, 1040NR, 1040A, 1040EZ, etc[.]" for tax years 2014–2018. Def.'s Mem. Ex. 5 at 1, ECF No. 18-6; id. Ex. 6, at 1, ECF

---

[1] The facts set forth below are drawn from the pleadings and documents submitted in connection with the government's motion to dismiss. Except where noted, they are not in dispute.

No. 18-7. In accordance with the forms, Mr. Castro was authorized "to receive and inspect [the Clarks'] confidential tax information and . . . perform acts that [the Clarks] can perform with respect to the tax matters described," including the authority "to sign any agreements, consents, or similar documents." Id. at 1.

### C.    The IRS Examination

On or about July 24, 2018, the IRS sent the Clarks an Information Document Request ("IDR"). In the IDR, the IRS asked the Clarks to submit a variety of financial records to support the amounts reported and claimed in their initial and amended 2014, 2015, and 2016 tax returns. Def.'s Mem. Ex. 7, at 1–2, ECF No. 18-8. The Clarks responded by providing the IRS with 156 pages of credit card statements, bank statements, and receipts. See Pls.' Resp. Ex. 2, ECF No. 19-4.

On or about September 4, 2018, IRS Agent Charles Arrowood interviewed Kenneth Clark and Mr. Castro by phone regarding the Clarks' 2014 and 2015 Forms 1040X. Pls.' Resp. Decl. of Kenneth Clark ¶ 11, ECF No. 19-1. According to Mr. Clark, the main subject of the call was their farming expenses. Id. ¶ 12. The parties also discussed the couple's prior returns, bank accounts, property ownership, safe deposit boxes, money in foreign accounts, unemployment, and education and work. Id.

Three days after the phone interview, Mr. Arrowood sent the Clarks a second IDR which, among other things, followed up on issues discussed during the interview. Compl. Ex. G, at 1, ECF No. 1-7. According to the Clarks' declarations, on or about February 11, 2019, they supplied the additional information requested in the second IDR. Pls.' Resp. at 3.

The record does not reveal what Mr. Arrowood did, if anything, after he received the Clarks' responses to the second IDR in February 2019. The Clarks heard nothing further from the IRS and so, several months later, they filed the present suit.

## II.    This Lawsuit

On May 15, 2019, the Clarks filed the present suit alleging that they are due a tax refund for tax years 2014 and 2015. Compl. ¶¶ 22–23. On February 26, 2020, the government moved to dismiss the Clarks' claims. It contends that the Clarks failed to "duly file" their tax refund claim with the IRS, which is a prerequisite to a taxpayer's pursuit of a civil action for a tax refund under 26 U.S.C. § 7422(a). The Clarks' refund claims were not "duly filed," the government argues, because they did not comply with 26 C.F.R. § 301.6402-2(b)(1), which provides in pertinent part that "the statement of the grounds and facts [set forth in a claim for a tax refund] must be verified by a written declaration that it is made under the penalties of perjury."

Plaintiffs, for their part, do not deny that their Forms 1040X did not comply with 26 C.F.R. § 301.6402-2(b)(1). But they contend that the IRS waived the application of that regulation by commencing an examination of their amended returns, notwithstanding that it

knew (or should have known) that the Clarks neither signed their amended returns, nor authorized Mr. Castro to do so.[2]

Oral argument was held on the government's motion on July 21, 2020. For the reasons set forth below, the Court holds that it lacks subject-matter jurisdiction over the Clarks' tax refund claims and therefore grants the government's motion to dismiss.

## DISCUSSION

### I.      Standard of Review

"In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." Estes Exp. Lines v. United States, 739 F.3d 689, 692 (Fed. Cir. 2014) (citing Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583–84 (Fed. Cir. 1993)). The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

The court may "inquire into jurisdictional facts" to determine whether it has jurisdiction. Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). It may therefore consider matters outside of the pleadings in ruling on a motion to dismiss pursuant to RCFC 12(b)(1). See Reynolds, 846 F.2d at 747 (finding that to determine jurisdiction the "court may consider relevant evidence in order to resolve the factual dispute").

### II.     The Government's Motion

It is well established that the Tucker Act, 28 U.S.C. § 1491(a)(1), grants this Court jurisdiction over suits for the refund of taxes paid to the Treasury. See Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002); see also Ont. Power Generation v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); Shore v. United States, 9 F.3d 1524, 1525 (Fed. Cir. 1993). This Court's exercise of that jurisdiction is subject, however, to the administrative exhaustion requirements imposed by 26 U.S.C. § 7422(a). That statute states in pertinent part that no suit for a tax refund "shall be maintained in any court . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." 26 U.S.C. § 7422(a).

As noted above, the government has moved to dismiss this case on the grounds that the amended tax returns were not "duly filed . . . according to . . . the regulations of the Secretary," as § 7422(a) requires. Specifically, the Forms 1040X that the Clarks filed with the IRS did not

---

[2] In their opposition to the government's motion to dismiss, the Clarks asked the Court to rule, in the alternative, that if they perfect their claims now, they will be eligible to invoke the informal claim doctrine to cure the jurisdictional defect. See Pls.' Resp. at 10. At the oral argument on the government's motion, the Clarks dropped this contention.

comply with the regulatory requirement that their refund claims "be verified by a written declaration that it is made under the penalties of perjury." 26 C.F.R. § 301.6402-2(b)(1).[3]

The regulations state that a claim that does not meet the verification requirement "will not be considered for any purpose as a claim for refund or credit." Id. Therefore, where a taxpayer fails to verify their refund claim under the penalty of perjury, they have not duly filed a claim with the IRS as § 7422(a) requires, and this Court cannot exercise subject-matter jurisdiction over their claims. See, e.g., Hall v. United States, 148 Fed. Cl. 371, 379 (2020) (dismissing refund suit for lack of jurisdiction where taxpayers' returns "did not contain a valid signature"); Dixon v. United States, 147 Fed. Cl. 469, 477 (2020) (dismissing refund suit for lack of jurisdiction where plaintiff "neither personally signed nor submitted valid power of attorney for his preparer to sign" plaintiff's returns); Wilson v. United States, No. 18-408T, 2019 WL 988600, at *4 (Fed. Cl. Feb. 27, 2019) (dismissing refund suit for lack of jurisdiction where plaintiff's attorney signed claim for refund, and attorney did not have proper authorization to sign on plaintiff's behalf).[4]

The Clarks argue that—despite their failure to sign and verify their amended returns— § 7422(a) does not apply because the IRS waived the verification requirement by commencing its examination of their 2014 and 2015 amended tax returns, and by gathering records and other information from them in furtherance of those examinations. Pls.' Resp. at 3–4. The Clarks have not met the "extremely heavy burden" they bear to show that the IRS waived this regulatory requirement. See Mallette Bros. Constr. Co. v. United States, 695 F.2d 145, 156−57 (5th Cir. 1983).

The Supreme Court's decision in Angelus Milling Co. v. Commissioner, 325 U.S. 293 (1945) is instructive. In that case, the petitioner had submitted refund claims to the IRS that were not on the forms prescribed by Treasury regulations for that purpose and that did not include a clear description of the grounds for the refund. 325 U.S. at 294–95. The IRS nonetheless initiated an examination of the petitioner's claims. Petitioner argued that by doing so the IRS waived compliance with the applicable regulatory requirements.

The Supreme Court rejected the petitioner's arguments. It observed that the Treasury regulation at issue was "calculated to avoid dilatory, careless, and wasteful fiscal administration by barring incomplete or confusing claims." Id. at 297. Yet if the IRS chose "not to stand on [its] own formal or detailed requirements," the Court observed, "it would be making an empty abstraction . . . to allow the [IRS] to invoke technical objections after [it] has investigated the merits of a claim and taken action upon it." Id.

---

[3] In some circumstances the IRS may permit a taxpayer's representative to sign a taxpayer's returns for them where they cannot do so because of injury, disease, absence from the United States, or for other good cause, as determined by the IRS. See 26 C.F.R. § 1.6012-1(a)(5). But even then "a power of attorney must accompany the claim." 26 C.F.R. § 301.6402-2(e). The Clarks did not execute a power of attorney that permitted Mr. Castro to sign their returns.

[4] The Court notes that two of these cited cases involved the same tax preparation firm as this one, and in each case the taxpayers neither signed the amended returns nor executed Forms 2848.

But while a waiver of regulatory requirements could avoid the jurisdictional bar of the predecessor of 26 U.S.C. § 7422(a) (Section 903 of Title VII of the 1936 Revenue Act, 49 Stat. 1648, 1747), the Court held, taxpayers bear a heavy burden to prove such a waiver. They must make an "unmistakable" showing "that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim." Id. The petitioner in Angelus Milling, the Court held, failed to meet that burden because it did not show "that the Commissioner, by examining the facts of petitioner's claim in order to determine the merits, dispensed with the exactions of the regulations." Id. at 299.

The government contends that a taxpayer can never establish waiver unless the IRS has made a decision on the merits of their claim or taken other final action. The Court disagrees. Theoretically at least, action short of a final decision on the merits may be sufficient to prove a waiver of a regulatory requirement, so long as it clearly reflects the IRS's intent to do so. See Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1368 (Fed. Cir. 2013) (rejecting waiver argument where the IRS "neither 'consider[ed]' nor made a 'determination of the merits'" of the claim (emphasis supplied)) (quoting Computervision Corp. v. United States, 445 F.3d 1355, 1365 (Fed. Cir. 2006) and Goulding v. United States, 929 F.2d 329, 332 (7th Cir. 1991)); see also Cudahy Packing Co. v. United States, 152 F.2d 831, 836 (7th Cir. 1945) (explaining that while "there [was] no doubt that [the IRS] had waived any defect in the claim," it "need not pass upon the merits of the claim to establish a waiver").

Nonetheless, the Court is cognizant of the critical purposes the verification requirements serve. See Borgeson v. United States, 757 F.2d 1071, 1073 (10th Cir. 1985) (observing that "[t]he perjury charge based on a false return has been deemed 'one of the principal sanctions available to assure that honest returns are filed'") (quoting Vaira v. Comm'r, 52 T.C. 986, 1005 (T.C. 1969), rev'd on other grounds, 444 F.2d 770 (3d Cir. 1971)). And given these important purposes, the Court is not persuaded that the Clarks have established an "unmistakable" intent on the IRS's part to waive compliance with them based solely on the fact that it initiated an examination of the Clarks' refund requests and gathered preliminary information in connection with that examination.

Further, a "waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (emphasis supplied). The IRS, therefore, "must at least be aware a violation has occurred before it can intentionally dispense with its own regulations." Hall, 148 Fed. Cl. at 378 (quoting and citing Angelus Milling, 325 U.S. at 297).

Here, the Clarks have not shown that the IRS knew—or even should have known at the time it launched its examination—that the Clarks had not personally signed their amended forms or verified their accuracy under penalty of perjury. The signatures on the lines for the taxpayers and the preparer on the Forms 1040X that the Clarks submitted in October 2016 were illegible. Def.'s Mem. Ex. 3, at 2 (2014 amended return); id. Ex. 4, at 2 (2015 amended return). Further, the amended returns were not accompanied by a Form 2848, which would have alerted the IRS to the fact that the Clarks had not signed them. It was not until July 23, 2018, several months after the examination was launched, that the Clarks submitted the Forms 2848 that bore their signatures. The IRS was under no obligation at that time to compare the signatures on the Forms

1040X and 2848 to verify that they belonged to the same individuals. And there is no evidence before the Court that it did so.

In short, the Clarks have not demonstrated an unmistakable intent on the part of the IRS to waive compliance with the verification requirement. As a result, their tax refund claims were not "duly filed" with the IRS and this Court is precluded by 26 U.S.C. § 7422(a) from exercising subject-matter jurisdiction over them.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss for lack of subject-matter jurisdiction is **GRANTED** and the complaint is **DISMISSED without prejudice**. The Clerk is directed to enter judgment accordingly. Each side shall bear its own costs.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge